SHAW ET AL. *v.* HARVEY ET AL.

[No. 15,262. Filed April 12, 1937.]

*J. H. Lawson* and *Q. Austin East,* for appellants.

*Regester & Regester,* for appellees.

WOOD, C. J.—The appellants for themselves and on behalf of other persons similarly situated, as members

of the Church of Christ of Bloomington, Indiana, brought suit against the defendants to enjoin them from interfering with and preventing plaintiffs from the use of the church building alleged to be the property of said church organization as a place for religious worship.

The issues consisted of a fourth amended complaint in one paragraph, to which the appellees filed a demurrer for insufficiency of facts to state a cause of action, for defect of parties plaintiff, and for want of jurisdiction of the court over the subject-matter of the action.

Appellee's demurrer was sustained, appellants refused to plead further, whereupon judgment was rendered against them upon the ruling on the demurrer, that they take nothing by their complaint and against them for costs. From this judgment appellants appeal, assigning as error, the sustaining of appellee's demurrer to this complaint.

The complaint is a long document taking up ten full pages of the record. We therefore refrain from including a verbatim copy thereof in this opinion.

For the purpose of a proper consideration and determination of this appeal, it is only necessary that we consider that phase of appellees' demurrer which questions the sufficiency of the facts alleged in the fourth amended complaint to state a cause of action.

When reduced to its last analysis, the only question presented by this controversy involves the respective rights of two different factions, existing between the members of the Church of Christ of Bloomington, Indiana, to the use of the church house, for religious purposes.

The complaint alleges that the church in question is an unincorporated, independent, congregational religious body, without any supervisory counsel or governing body. It is further alleged that in the election of

new elders and deacons in the church, the appellees failed to follow and purposely ignored the rules of procedure adopted by the church for its conduct in such matters. In *Nance* v. *Busby* (1892), 91 Tenn. 303, 18 S. W. 874, 15 L. R. A. 801, a church case, the court in discussing the rights of members in churches of the class here involved said (p. 334) : "The congregation to which complainants belonged was congregational and independent. It was a pure democracy. The power of excommunication reposed in the majority of the members voting at any conference. From its action there was no appeal. This fact may be a defect in the organization. It is not for us to say, nor for those affected by its judgment to complain. They voluntarily submitted themselves to the absolute power of a majority. They tacitly agreed to abide by and submit to such judgment. This church, when sitting in conference, was a judicature. It may have erred in construing the usage and practice of the church to justify a proceeding for expulsion without notice to the accused of the charges, and without giving him opportunity to vindicate himself. It, however, proceeded to adjudge excommunication. Its act was the act of the church. Complainants thereafter ceased to be members of this church. We cannot restore their names to the roll, or by mandamus compel recognition as members by the church which has repudiated them."

In the case of *Fussell* v. *Hail* (1908), 233 Ill. 73, 84 N. E. 42, the Supreme Court of Illinois expressed itself in this language (p. 77) : "The civil courts afford no remedy for any abuse of ecclesiastical authority which does not violate a civil or property right. Church tribunals ought to perform their functions honestly, impartially, and justly, with due regard to their constitutional powers, sound morals, and the rights of all who are interested; but, if tyranny, force, fraud, oppression, or corruption

prevail, no civil remedy exists for such abuse, except where it trenches upon some property or civil right. The ordinary courts have no cognizance of the rules of a religious organization or other voluntary association, and cannot consider whether they have been rightly or wrongly applied."

Our own Supreme Court, in the case of *Ramsey* v. *Hicks* (1910), 174 Ind. 428, 445, 91 N. E. 344, says: "The right to worship according to the dictates of conscience is guaranteed to the citizens of this republic, but controversies growing out of differing doctrinal beliefs and spiritual conceptions, and involving no civil right, are too intangible to form the basis of a civil action. It is the exclusive prerogative of religious tribunals, when considering only ecclesiastical interests and questions, to construe their own statutes and ordinances, and to determine for themselves the regularity and validity of their proceedings. It cannot concern the civil authorities whether one accused of a spiritual offense be tried by an unconstitutional tribunal, or be denied merely religious rights and privileges without trial or without cause, since membership in an unincorporated religious society does not constitute a civil or valuable right within the meaning of the law."

The complaint alleges that the board of trustees holds the naked title to the church property for the use and benefit of its membership, but that they have nothing to do with control and management thereof; that those are functions and duties of the elders and deacons of the church. There is no allegation as to the nature, character or purpose of the conveyance or grant under which the trustees hold the title to the property. There is no allegation in the complaint that the appellees have abandoned or contemplate the abandonment of the confession of faith, creed, discipline or doctrine on which the church is founded; nor is there any allegation that

the appellees have converted the use of the church property to the use of a denomination whose confession of faith, creed, discipline or doctrines are different from or antagonistic to those for whose use and benefit said property is now held; nor is there any allegation that they propose to do so. There is no allegation that the appellants and their co-parties are an organized body representing a faction or schism in the church, representing its original confession of faith, creed, discipline or doctrines, separate from that represented by the appellees. The facts alleged in the complaint exhibit the development of a situation within the church which demanded the exercise of its ecclesiastical jurisdiction. The appellants do not seek title to the church property, but only ask that they be permitted to worship therein, their demand being based upon the fact alone that they are members of the church.

In the case of *White Lick, etc.* v. *White Lick, etc.* (1883), 89 Ind. 136, our Supreme Court said (p. 151): "Civil courts in this country have no ecclesiastical jurisdiction. They cannot revise or question ordinary acts of church discipline, and can only interfere in church controversies where civil rights or the rights of property are involved. Where a civil right depends upon some matter pertaining to ecclesiastical affairs, the civil tribunal tries the civil right, and nothing more, taking the ecclesiastical decisions, out of which the civil right has arisen, as it finds them, and accepting those decisions as matters adjudicated by another jurisdiction. The civil courts act upon the theory that the ecclesiastical courts are the best judges of merely ecclesiastical questions, and of all matters which concern the doctrines and discipline of the respective religious denominations to which they belong. When a person becomes a member of a church he becomes so upon the condition of submission to its ecclesiastical jurisdiction, and however

much he may be dissatisfied with the exercise of that jurisdiction, he has no right to invoke the supervisory power of a civil court as long as none of his civil rights are invaded."

In the case of *Ramsey* v. *Hicks, supra,* it was held that a civil court does not have judisdiction to examine into the regularity and validity of a church tribunal and restrain its proceedings for non-conformity to its own laws. The court further says (p. 447) : "The primary object of religious association is worship, to which the possession of property is subordinate and necessarily incident. No man can hope to receive pecuniary profit from his religious membership, and as a communicant in a church he has no private interest in its property." See also *Lamb* v. *Cain* (1891), 129 Ind. 486, 29 N. E. 13; *Smith* v. *Pedigo* (1896), 145 Ind. 361, 33 N. E. 777; *Fussell* v. *Hail, supra.*

When measured by the rules of law to which the courts adhere in cases of the kind presented by the record before us, the complaint fails to state facts sufficient to entitle the appellants to the relief they demand.

Finding no reversible error, the judgment is affirmed.